KURCZEWSKI v STATE HIGHWAY COMMISSION

Docket No. 49316. Submitted October 13, 1981, at Detroit.—Decided January 20, 1982. Leave to appeal applied for.

Joanne C. Kurczewski, in her own right, as administratrix of the estates of Thaddeus C. Kurczewski, deceased, and Robyn Kurczewski, deceased, and as guardian of Shawn Kurczewski, a minor, brought an action in the Court of Claims against the Michigan State Highway Commission for damages resulting from a motor vehicle accident allegedly caused by the commission's negligence in failing to maintain a highway within its jurisdiction. The action was consolidated with a separate action in Wayne Circuit Court against Russel Frank and Mary K. Robbins arising from the same incident. A consent judgment was entered against defendant Frank. Trial continued as to the other defendants. Following trial, the court, sitting as the trier of fact, awarded the plaintiff damages against defendant Robbins but found no cause of action against the commission because, although negligent, the commission's breach of duty was not a proximate cause of the accident, Daniel J. Van Antwerp, J. The plaintiff appeals. Held:

1. The trial court properly refused to exclude certain documents offered by the commission. Although the commission had failed to produce the documents during discovery in compliance with the court's order, the court was not obligated to exclude the documents. In addition, the record reveals that the plaintiff was not prejudiced by the commission's refusal to produce the documents.

2. The record reveals that the trial court did not use evidence of the absence of previous accidents at the location in question to find lack of negligence on the part of the commission. The evidence was elicited by the plaintiff, and no effort was made

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Courts §§ 82-86.
   23 Am Jur 2d, Depositions and Discovery §§ 256-267.
[2] 29 Am Jur 2d, Evidence § 251.
[3] 75 Am Jur 2d, Trial §§ 378-380.
[4] 5 Am Jur 2d, Appeal and Error § 820.
[5] 39 Am Jur 2d, Highways, Streets and Bridges § 374.

by the plaintiff to limit the use of the evidence, precluding review on appeal.

3. The record supports the trial court's determination that the commission's negligence was not a proximate cause of the accident.

4. The trial court properly found that the plaintiff had stated no cause of action against the commission.

Affirmed.

1. MOTIONS AND ORDERS — DISCOVERY — COURT RULES — SANCTIONS.

A trial court, in its discretion, may impose appropriate sanctions upon a party to an action for failure to comply with a discovery order (GCR 1963, 313.2[2]).

2. HIGHWAYS — EVIDENCE — PRIOR ACCIDENTS — NEGLIGENCE — APPEAL.

Evidence of the absence of accidents along a particular section of a highway should not be admitted to prove absence of negligence; however, where the evidence is elicited by the plaintiff and the plaintiff does not attempt to limit the use of the evidence by the trier of fact, review is precluded on appeal (MRE 103[a]).

3. NEGLIGENCE — PROXIMATE CAUSE — QUESTIONS OF FACT.

Generally, the question of proximate cause in a negligence action is to be determined by the trier of fact.

4. APPEAL — FINDINGS OF FACT.

A finding of fact made by a trial court sitting as the trier of fact will be found to be clearly erroneous where, although there is evidence to support it, a reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made (GCR 1963, 517.1).

5. HIGHWAYS — NEGLIGENCE — PROXIMATE CAUSE — ACTIONS.

A breach of duty by the Michigan State Highway Commission to maintain a highway within its jurisdiction in reasonable repair which is not a proximate cause of a person's bodily injury or property damage sustained in an accident upon the highway will not support a cause of action for the damages against the commission (MCL 691.1402; MSA 3.996[102]).

*Freeman, McKenzie, Matthews, Scherer & Stepek,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, and *Carl K. Carlsen* and *Myron A. McMillan,* Assistants Attorney General, for defendant.

Before: N. J. KAUFMAN, P.J., and J. H. GILLIS and CYNAR, JJ.

PER CURIAM. Plaintiff appeals as of right from a judgment of no cause of action in favor of defendant Michigan State Highway Commission entered following a bench trial in Wayne County Circuit Court.

Plaintiff's claim arose out of an automobile accident occurring on August 28, 1972, in Detroit. On that day, plaintiff was traveling southbound on the I-75 expressway enroute to Seaworld in Aurora, Ohio, in the company of her husband, Thaddeus Kurczewski, and their two daughters, Robyn and Shawn. Traveling in the opposite direction was Mary Kim Robbins in a vehicle owned by Russel Frank. As the cars approached one another, the left rear tire of the Robbins' vehicle came off, bounced over the median, and smashed into the windshield or hood of plaintiff's Pinto. The Pinto then shot out to the right across the expressway and up an embankment. As the vehicle approached the Mack Avenue overpass it passed to the right of the first few pillars but collided with and spun around the fourth pillar, coming to a rest between the fourth and fifth pillars. Thaddeus and Robyn Kurczewski died in the accident, while plaintiff and Shawn Kurczewski, although injured, survived.

Plaintiff commenced suit, individually and on behalf of her surviving daughter and the estates of her decedents, in Wayne County against Mary Kim Robbins and Russel Frank. A separate action was brought against the state highway commission

in the Michigan Court of Claims. Plaintiff's theory against the commission was that it acted negligently and in violation of MCL 691.1402; MSA 3.996(102)[1] by failing to erect a guardrail along the side of the expressway approaching the underpass. Plaintiff contended that a properly installed guardrail would have prevented the vehicle's impact with the overpass pillars.

Prior to trial, a consent judgment was entered between plaintiff and defendant Frank. The remaining claims were consolidated and tried on October 1-5, 1979. The trial court, in a written opinion, found in favor of plaintiff with regard to defendant Robbins and awarded a total verdict in the amount of $1,182,000. In ruling against plaintiff with regard to the highway commission, the court concluded that, although a guardrail should have been installed at the accident site, the commission's negligence in failing to do so was not a proximate cause of the accident.

Plaintiff's first claim on appeal is that the trial court erred in admitting into evidence the highway commission's exhibits Nos. 11 and 12 despite plaintiff's objection that the documents had not been produced by the commission before trial pursuant to plaintiff's subpoena *duces tecum.* Plaintiff asserts that the error was particularly prejudicial because exhibit No. 11 was specifically referred to in the trial court's opinion.

Approximately two weeks before trial, plaintiff

---

[1] MCL 691.1402; MSA 3.996(102) provides:

"Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency."

served the highway commission with a subpoena
*duces tecum* which requested, in part:

"1. All standards, directives, memoranda, or whatever
else pertains to the use of guardrails in advance of
overpass bridge piers in urban areas. These documents
should cover the period when the road was designed
until the time of the accident.

"2. All standards, directives, policies, etc., that per-
tain to roadside safety improvement programs in urban
areas in Michigan that were in effect from the time of
design until the accident."

During the course of trial it became evident that
the commission at best had complied minimally
with the discovery order. The trial court conducted
an evidentiary hearing to determine the extent
and reasons for the noncompliance. Dwight A.
Bell, a supervising engineer in the commission's
design division who had attempted to produce the
materials, explained that the commission was di-
vided into seven separate divisions and that there
was no central file from which the requested docu-
ments could be culled. However, when it later
became apparent that there were additional docu-
ments uncovered by Bell that had been withheld,
defense counsel revealed that there was a less
reasonable explanation for the failure to comply
with the discovery order. Counsel indicated, quite
candidly, that he believed plaintiff to already pos-
sess the material since plaintiff's expert witness
had been "foraging through [the commission's]
files for years". At the conclusion of the eviden-
tiary hearing, the trial court recessed the proceed-
ings and instructed the counsel to get together and
agree to the furnishing of the additional materials.
When trial resumed the parties, who had appar-

ently resolved the discovery dispute, stipulated to the admission of a variety of plaintiff's exhibits.

One of the documents that had been withheld was a report referred to at trial as NCHRP Report 118, and entitled "Location, Selection, and Maintenance of Highway Traffic Barriers". The document was a report of traffic safety research sponsored by the American Association of State Highway Officials conducted in cooperation with the Federal Highway Administration. The report, released in 1971, was pertinent during trial since it contained formulas for computing the length of highway guardrails. The report represented itself as the "state-of-the-art" in engineering judgment and highway experience. Defendant highway commission's exhibits Nos. 11 and 12 were excerpts from the report. Plaintiff objected during trial to their introduction because of the commission's noncompliance with the discovery order. The trial court declined to exclude the exhibits, observing that plaintiff had used another portion of the report during her case.

GCR 1963, 313.2(2) provides a variety of remedies for a party's failure to respond to discovery orders. The court may order disputed facts established, prohibit the offending party from supporting or opposing a particular claim or defense, strike portions of pleadings, stay proceedings until compliance is had or enter a dismissal or default judgment. If the discovery order is not for a mental, physical, or blood examination, the offending person may be considered in contempt of court. We believe these remedies are broad enough to have permitted the trial court to exclude the exhibits in question had the court believed that to be an appropriate remedy. However, the imposition of sanctions for failure to comply with a

discovery order is a matter of trial court discretion. *Cf. Philips Industries, Inc v Smith,* 90 Mich App 237, 246; 282 NW2d 788 (1979). In this case, the trial court's refusal to exclude the documents did not constitute an abuse of discretion.

It is apparent that plaintiff had access to a copy of the report prior to its use by the defense, inasmuch as plaintiff offered as evidence a separate portion of the report as her exhibit No. 77. The fact that plaintiff's counsel was familiar with the document is attested to by his failure to request a continuance of trial when exclusion was denied. The report was, without question, relevant to issues raised during trial. Because plaintiff was not prejudiced by the highway commission's failure to produce the material, the trial court's decision can only be viewed as a proper exercise of discretion. Our ruling in this regard should not be read as approval of defendant's actions. If defendant had valid objections to the scope of plaintiff's discovery, it should have voiced those objections rather than unilaterally deciding that certain materials could be withheld. While it was not necessary to exclude defendant's exhibits Nos. 11 and 12, other sanctions against the commission, had they been requested by plaintiff and considered by the trial court, may well have been fitting.

Plaintiff next argues that the trial court erred by giving weight to evidence regarding the lack of other accidents at the scene. The rule in Michigan has long been that evidence of the absence of previous accidents should not be admitted to prove absence of negligence. *Grubaugh v City of St Johns,* 82 Mich App 282, 287; 266 NW2d 791 (1978). Here, the evidence was admitted during plaintiff's own examination of an investigating police officer. During the course of the questioning,

plaintiff's counsel suspected that the officer had confused the case with another, and he proceeded to inquire about accidents in the area. The following colloquy then took place:

"*Q.* Did you have any single car accidents on the pier like that? Or, other piers along I-75, single car accidents at the pier?
"*A.* Not to my knowledge.
"*Q.* You didn't have any?
"*A.* No; I didn't."

Plaintiff did not request that use of the testimony be limited by the court to the question of the officer's possible confusion with other accidents. Subsequently, defense witness Dwight Bell testified, over plaintiff's objection, that he knew of no complaints regarding the need for a guardrail at the location. The trial court's written opinion took note of both witnesses' testimony on this point.

In view of the fact that the officer's testimony was elicited by plaintiff's counsel, who took no steps to minimize its consideration, appellate review of this claim is precluded. MRE 103(a). Further, the testimony of Mr. Bell, although objected to, did not constitute direct evidence of an absence of accidents. Bell testified only that he knew of no complaints with respect to the overpass. Finally, any possible error from admission of the testimony was harmless. It is apparent from a reading of the trial court's opinion that the evidence was insignificant with regard the court's ultimate reason for finding the highway commission to be free from liability. The court did conclude that the commission was negligent in failing to erect a guardrail but determined that the breach of duty was not a proximate cause of plaintiff's damages since a guardrail of reasonable length would not have

prevented plaintiff's vehicle from striking the overpass piers. Thus, the court did not use the disputed evidence to find a lack of negligence.

Plaintiff's final argument is that the trial court erred in finding that the failure to install a guardrail was not a proximate cause of the injuries sustained. The question of proximate causation is a factual issue. *Kangas v New York Life Ins Co,* 223 Mich 238, 244-245; 193 NW 867 (1923), *Michigan Sugar Co v Employers Mutual Liability Ins Co of Wisconsin,* 107 Mich App 9, 14; 308 NW2d 684 (1981), *Stremler v Dep't of State Highways,* 58 Mich App 620, 629; 228 NW2d 492 (1975). It must be remembered that in reviewing factual determinations this Court applies the "clearly erroneous" standard. GCR 1963, 517.1 provides in part:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the fact specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. * * * Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it."

A finding of fact is clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

As noted above, the basis for plaintiff's claim against the highway commission was that the commission failed to maintain the highway in reasonable repair so that it was reasonably safe and convenient for public travel. MCL 691.1402;

MSA 3.996(102). Plaintiff and defendant highway commission each presented expert witnesses who testified to the changes in highway safety design from the time the road in question was built *(circa 1960)* through the time of the accident. Plaintiff's expert, Duane F. Dunlap, testified that at the time of the accident there was an existing standard for guardrail lengths that required a guardrail of 225 feet. Dunlap stated that, in his opinion, the particular site required a minimum guardrail length of 250 feet. He also pointed out that the highway commission's own 1960 Design Manual mandated that such a guardrail be at least 150 feet in length. Dunlap further cited a 1964 study by the Highway Research Board of the National Academy of Sciences that he claimed called for a minimum guardrail length of 200 feet. Dunlap contended that defendant's 1970 standard plan for beam guardrails also called for a minimum length of 200 feet.

Dwight Bell, testifying for the highway commission, disputed Dunlap's conclusions. While Bell conceded that there should have been a guardrail at the location, he asserted that a minimum length of 50 feet would have been appropriate. Nonetheless, Bell also referred to the disputed NCHRP Report 118, which contained a formula that called for an 89.1-foot guardrail for the conditions at the overpass. Bell specifically disagreed with Dunlap's references to other guidelines. He stated that the 1960 Design Manual, as cited by Dunlap, applied only to guardrails at fills and gorges and that the 1964 study of the Highway Research Board applied to guardrails at embankments, meaning fills from lower ground to the highway. Finally, Bell pointed out that the 1970 standard design used by Dunlap was not an actual

standard of the commission and, in any event, was applicable only to rural highways.

The trial court concluded that the highway commission had failed to comply with the statutory duty to keep the highway in reasonable repair by failing to install a guardrail. However, the court also determined that the area would have been in reasonable repair had the commission erected a guardrail of 50 feet in length. The basis for this finding was that until 1973 there was no nationwide "state-of-the-art" standard calling for longer guardrails and that the standard accepted within Michigan at the time of the accident suggested just a 50-foot guardrail. Reviewing the whole of the evidence, and in particular the testimony of witnesses Dunlap and Bell, we are not left with a firm and definite conviction that the trial court erred in this regard. *Tuttle, supra.*

The trial court also found that "any guardrail less than 140 feet would not have prevented this accident". We interpret this to mean that, based on the path traveled by plaintiff's vehicle from the road to the overpass piers, a barrier of less than that length would not have prevented the impact with the piers.[2] This finding was fully supported by the record, which included a photograph of the accident site showing the tire tracks left by plain-

---

[2] We find plaintiff's contention that the trial court, in discussing the causation issue, confused the initial cause of the accident (*i.e.,*—the impact of the tire on plaintiff's auto) with proximate cause of plaintiff's injuries to be without merit. The trial court recognized that the damages in this case were indivisible, that is, the damages from the direct impact of the tire could not be separated from those attributable to the impact with the piers. Although the highway commission could only be culpable for the latter damages under plaintiff's theory of the accident because of the indivisible quality of plaintiff's injuries, had the commission been found liable, its liability would have been joint and several with that of Ms. Robbins for the entire damages. See, *e.g., Watts v Smith,* 375 Mich 120, 125; 134 NW2d 194 (1965), *Maddux v Donaldson,* 362 Mich 425; 108 NW2d 33 (1961).

tiff's vehicle. We cannot conclude that this latter finding was clearly erroneous.

"Proximate cause" has been defined as " 'that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, without which such injury would not have occurred * * *' ". *Michigan Sugar Co, supra,* 14, quoting *Weissert v City of Escanaba,* 298 Mich 443, 452; 299 NW 139 (1941). In the instant case, the highway commission's breach of duty consisted of failing to maintain a guardrail of at least 50 feet in length. That breach of duty did not produce plaintiff's injuries. Stated conversely, it cannot be said that without the breach of duty plaintiff's injuries would not have occurred. The highway commission's neglect was not a proximate cause of the accident, based on the trial court's findings, which we affirm, regarding the sequence of the accident and the standards for highway maintenance in effect at the time of the accident. The trial court did not err in returning a verdict of no cause of action in favor of defendant highway commission.

Affirmed.